NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RICHARD P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.P., E.P., *Appellees*.

No. 1 CA-JV 19-0113
FILED 2-25-2020

Appeal from the Superior Court in Maricopa County
No. JD35161
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge Joshua Rogers[1] delivered the decision of the Court, in which Acting Presiding Judge David D. Weinzweig and Chief Judge Peter B. Swann joined.

---

**R O G E R S**, Judge:

**¶1**        Richard P. ("Father") appeals the superior court's order terminating his parental rights to his two children, born in 2016 and 2017.[2] For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        After Father's second child was born substance exposed in September 2017, the Department of Child Safety ("DCS") began providing Father and his children's mother ("Mother") services, although the parents retained custody of their children.[3]  DCS required the parents to drug test and the children's maternal grandfather to supervise Mother and Father while with their children.  Father attended intake with Terros and participated in drug tests, but he failed to attend group therapy sessions. Towards the end of November 2017, Father told DCS he would no longer participate in services and admitted leaving Mother alone with the children in violation of the safety plan and minimized concerns about the violation. DCS then took the children into its custody and, in December 2017, filed a dependency petition as to Father and Mother in superior court.

**¶3**        DCS thereafter provided Father with services including individual counseling, substance abuse treatment, drug testing, parent

---

[1]        The Honorable Joshua Rogers, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution.

[2]        The court also terminated the parental rights of the children's mother.  This decision does not address her rights.

[3]        We view the facts and reasonable inferences therefrom in the light most favorable to affirming the superior court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

aide, case aide, and bus passes; it also provided him with domestic violence counseling services because he had harmed Mother in 2013. Father had sporadic periods of negative drug tests followed by periods when he missed tests; DCS never received proof that Father completed any substance abuse treatment program. Father refused to participate in counseling services and was closed out on four separate occasions. He was also closed out of case aide and parent aide services for lack of contact, and he cancelled more than half of his scheduled visitations.

¶4 In October 2018, DCS moved to terminate Father's parental rights. The superior court held a trial in March 2019, at which a DCS supervisor and Father testified. The court ultimately terminated Father's parental rights, finding that DCS had proven abandonment, chronic substance abuse, and nine months' time-in-care under A.R.S. § 8-533(B)(1), (B)(3), and (B)(8)(a) and that termination was in the children's best interests.

## DISCUSSION

¶5 The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). When DCS seeks termination of a parent-child relationship, it must prove, by clear and convincing evidence, the existence of a statutory ground under A.R.S. § 8-533(B), and, by a preponderance of the evidence, that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J.*, 196 Ariz. at 249, ¶ 12. "Because the juvenile court is in the best position to weigh evidence and assess witness credibility, we accept [that] court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

¶6 Under § 8-533(B)(8)(a), DCS must show that (1) the child has been in an out-of-home placement for at least nine months; (2) DCS "has made a diligent effort to provide appropriate reunification services;" and (3) the parent has "substantially neglected or wilfully refused to remedy the circumstances that cause" the child's out-of-home placement. [4] Father does not contest the first and third prongs; he only argues DCS failed to diligently provide appropriate reunification services. In particular, he

---

[4] Because substantial evidence supports the court's decision to sever Father's rights under § 8-533(B)(8)(a), we need not address Father's arguments relating to the other grounds for severance. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

argues that DCS failed to "maintain contact with [him] during the pendency of the case," and that it failed to offer him services after he moved to California.

**¶7**         Those arguments fail because, as the superior court found, Father waived any challenge to the adequacy of the services DCS provided him. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶¶ 13-16 (App. 2014). The superior court held nine hearings at which Father could have raised the inadequacy of the services provided by DCS, including at least three after Father moved to California in October or November 2018. Father only points to two instances in which he raised an issue. At an April 2018 hearing, Father complained that his case manager had not responded to his recent attempts to contact her, although by then he had been closed out of services for failure to participate.[5] The only other time Father raised DCS's failure to communicate, and the only time he raised DCS's failure to provide him services in California, was during trial, at least four months after he moved to California and 17 months after DCS became involved.

**¶8**         Father points to an email he sent to his attorney, which was also cc'd to the DCS case manager, in which he said his "family would like to know if [he] can do services out in California." But this email does not make clear whether Father was actually requesting services be reinitiated or wanted the DCS case manager to take any action.

**¶9**         Beyond the waiver, the superior court found, and the record supports, that DCS provided Father with services including individual counseling, domestic violence counseling, substance abuse treatment, drug testing, parent aide, case aide, and bus passes. Thus, reasonable evidence supports the court's finding that DCS diligently provided Father with appropriate reunification services.

**¶10**         Father also argues the superior court erred when it found termination of his parental rights was in the children's best interests. Termination of a parent's rights "is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018).

---

[5]         Before the hearing, DCS reinitiated visitation, but ultimately Father was closed out for not engaging.

¶11  The court heard testimony that Father had not completed any drug treatment, domestic violence, or individual counseling program and attended less than half of scheduled visitations with the children. Further, Father admitted he could not afford his own housing and had not sent the children any support. The DCS supervisor testified that one of Father's children has special needs, and the other was being evaluated for developmental issues. She further stated that the children's placement is providing for the children's needs, is strongly bonded with the children, and the children know the placement as their parents. Based on this evidence, we cannot say the court erred when it found termination of Father's parental rights was in the children's best interests.

## CONCLUSION

¶12  For all the reasons stated above, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA